UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ARMECA HAYES-JACKSON, )<br>      Plaintiff, )<br>)<br>      v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security )<br>Administration, )<br>      Defendant. ) | CAUSE NO.: 2:15-CV-315-JEM |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff on August 25, 2015, and on Plaintiff's Brief in Support of Her Motion to Reverse the Decision of the Commissioner of Social Security [DE 17], filed by Plaintiff on December 11, 2015. The Commissioner filed a response to Plaintiff's brief on March 21, 2016, and Plaintiff filed a reply on March 31, 2016.

**I.      Procedural Background**

In February 2014, Plaintiff applied for disability insurance benefits with the United States Social Security Administration ("SSA"), alleging that she had become disabled as of October 14, 2013. Plaintiff's claim was denied initially and on reconsideration. On February 11, 2015, Administrative Law Judge ("ALJ") Jessica Inouye held a hearing at which Plaintiff, represented by counsel, and a vocational expert ("VE") testified. On April 24, 2015, the ALJ issued a decision denying Plaintiff benefits on the ground that Plaintiff was not disabled.

In the opinion, the ALJ made the following findings under the required five-step analysis:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2. The claimant had not engaged in substantial gainful activity since October 14, 2013, the alleged onset date.

3. The claimant had the following severe impairments: right shoulder; degenerative joint disease, rotator cuff disease, and impingement syndrome; cervical and lumbar spine degenerative disease; obesity; sarcoidosis and asthma; obstructive sleep apnea; mild mitral regurgitation and pulmonary hypertension; major depressive disorder; and generalized anxiety disorder.

4. The claimant did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

5. The claimant had the residual functional capacity ("RFC") to perform light work in that she could sit for a total of six hours and stand or walk in combination for a total of six hours in an eight-hour work day with normal breaks. The claimant could lift and carry up to twenty pounds occasionally and ten pounds frequently. The claimant could never climb ladders, ropes, or scaffolds, and could occasionally climb ramps and stairs. The claimant could occasionally balance, stoop, kneel, crouch, and crawl. The claimant needed to avoid concentrated exposure to hazards of moving dangerous machinery and unprotected heights. The claimant needed also to avoid concentrated exposure to pulmonary irritants, extreme temperatures, humidity, and wetness. The claimant could occasionally push, pull, and reach overhead with her right upper extremity. The claimant could understand, remember, and perform simple, repetitive tasks. The claimant could never work with the general public, but could communicate and relate to coworkers and supervisors, and make ordinary work decisions with no over-the-shoulder, intense supervision.

6. The claimant was unable to perform any past relevant work.

7. As of the alleged disability onset date, the claimant was fifty-one years old, which is defined as an individual closely approaching advanced age.

8. The clamant has at least a high school education and is able to communicate in English.

9. Transferability of job skills was immaterial to the disability determination because Plaintiff was "not disabled" under the Medical-Vocational rules irrespective of whether she had transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant had not been under a disability, as defined in the Social Security Act,

from October 14, 2013, through the date of the ALJ's decision.

On July 6, 2015, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. On August 25, 2015, Plaintiff filed the underlying Complaint seeking reversal of the adverse SSA determination.

The parties consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Facts

In January 2012, Plaintiff's primary care physician, Dr. Shobha Iyengar, treated Plaintiff for asthma and sarcoidosis. Later that same year, Dr. Iyengar saw Plaintiff again and noted that her asthma had worsened. Plaintiff was also diagnosed with obstructive sleep apnea. Doctors told Plaintiff that she should use a CPAP machine while sleeping, and that she should lose weight to combat her breathing issues. Plaintiff often did not comply with her CPAP treatment.

Plaintiff also struggled with pain in her right shoulder. In October 2013, Dr. Iyengar referred Plaintiff to Dr. Jason Davenport, who diagnosed Plaintiff with right rotator cuff diseases, joint osteoarthritis, impingement syndrome, and adhesive capsulitis. Plaintiff continued to have shoulder issues through the date of the hearing. At various times, Plaintiff received injections and took over-the-counter and prescribed medications to help manage her shoulder pain.

In December 2013, Dr. Iyengar noted that Plaintiff had pain in her upper back and neck. Plaintiff additionally reported lower back pain in May 2014. MRIs and X-rays revealed that Plaintiff had both cervical and lumbar spine issues, including disc protrusions, anterolisthesis, and spondylosis.

As early as March 2012, Plaintiff reported having palpitations. In November 2012, Plaintiff

complained of chest pain and palpitations, which revealed mildly increased pulmonary artery pressure and mild regurgitation. Some of Plaintiff's doctors opined that Plaintiff's chest pain and palpitation might have been related to mental health issues.

In October 2012, Plaintiff visited Dr. Martin Fields, a psychiatrist. Dr. Fields diagnosed Plaintiff with major depressive disorder and generalized anxiety disorder. Dr. Fields prescribed an antidepressant and an anxiety treatment medication. In March 2013, Plaintiff was additionally diagnosed with a panic disorder. From 2012 and into 2015, Plaintiff visited multiple physicians, reporting anxiety, stress, inability to concentrate, and depression. Plaintiff sporadically visited Dr. Melissa Young, a psychologist, for psychotherapy sessions from late 2012 through February 2015.

### III. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the SSA and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the

question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "A reversal and remand may be required, however, if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citations omitted).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Does the impairment meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform

despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## IV. Analysis

### A. Residual Functional Capacity

Plaintiff argues that the ALJ erred in failing to consider certain medical opinions in the record when assessing Plaintiff's RFC. Specifically, Plaintiff argues that the ALJ should have incorporated the medical findings of Dr. Victoria Dow, a state agency physician who determined that Plaintiff had a limited ability to reach in front of her with her arms due to shoulder problems. The Commissioner contends that the ALJ's decision was supported by substantial evidence, namely multiple medical opinions in the record that were not consistent with Dr. Dow's conclusions.

The RFC is an assessment of what work-related activities the claimant can perform despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). Although an ALJ is not required to discuss every piece of evidence, she must consider all of the evidence that is relevant to the disability determination and provide enough analysis in her decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 870; *Young,* 362 F.3d at 1002. In other words, the ALJ must build an "accurate and logical bridge

7

from the evidence to his conclusion." *Scott*, 297 F.3d at 595 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

In October 2013, Plaintiff visited Dr. Davenport, who diagnosed her with right rotator cuff diseases, joint osteoarthritis, impingement syndrome, and adhesive capsulitis. AR 21-22. Dr. Dow, a state agency medical reviewer, concluded that Plaintiff was "limited to occasional reaching in *all* direction[s]." AR 111. The ALJ noted that she gave Dr. Dow's opinion "substantial weight" in assessing Plaintiff's RFC. AR 28. But the ALJ found that Plaintiff could "use her right upper extremity only occasionally for pushing, pulling, and reaching overhead," and that there was "no reason why she could not perform all other functions with her upper extremities." AR 26. The ALJ did not explain why she concluded that Plaintiff was limited in reaching only "overhead" rather than in all directions as Dr. Dow had concluded.

The ALJ's duty is to resolve inconsistencies in the evidence. *See* SSR 96-8p; 20 C.F.R. § 404.1527. The ALJ must resolve any differences of opinion and explain why she accepted one opinion over another. *See Corder v. Massanari*, No. 00 C 2714, 2001 WL 1355986, at *4 (N.D. Ill. Nov. 1, 2001) ("By failing to resolve conflicts in competing opinions . . . the ALJ left his conclusions seeking a factual basis."). The Seventh Circuit Court of Appeals has warned ALJs against cherry-picking evidence in the record to support their conclusions. "An ALJ cannot rely only on the evidence that supports her opinion." *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014) (quoting *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013)); *see also Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("[T]he ALJ identified pieces of evidence in the record that supported her conclusion that [the plaintiff] was not disabled, but she ignored related evidence that undermined her conclusion. This 'sound-bite' approach to record evaluation is an impermissible methodology

8

for evaluating the evidence."); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). Although medical evidence "may be discounted if it is internally inconsistent or inconsistent with other evidence," *Knight*, 55 F.3d at 314 (citing 20 C.F.R. § 404.1527(c)) (other citations omitted), the ALJ "must provide a 'logical bridge' between the evidence and h[er] conclusions." *O'Connor-Spinner*, 627 F.3d at 618.

Here, the ALJ did not mention Dr. Dow's findings in her opinion, and instead cited generally to Dr. Dow's report. AR 28. The ALJ failed to discuss why Dr. Dow's limitation findings, which she gave substantial weight, were not incorporated into her RFC conclusions. Dr. Dow concluded that Plaintiff was limited in reaching in all directions. However, the ALJ concluded that Plaintiff was only limited in reaching above her head, and did not explain why she disregarded Dr. Dow's conclusions. AR 26. Accordingly, the Court cannot find the "logical bridge" between the ALJ's cited evidence and her conclusions concerning Plaintiff's RFC. *See O'Connor-Spinner*, 627 F.3d at 618. This error, alone, warrants remand.

Additionally, Plaintiff argues that the ALJ failed to consider her impairments in the aggregate, analyzing their compound effect on Plaintiff's ability to work. Plaintiff also contends that the ALJ did not rely on any medical opinion that considered Plaintiff's impairments collectively. The Commissioner argues that the ALJ's RFC analysis was sound, and that the ALJ properly analyzed Plaintiff's impairments both individually and in combination.

"Although . . . impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether. Moreover, . . . an ALJ must consider the

9

combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might be disabling."); *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) ("[A]n ALJ is required to consider the aggregate effects of a claimant's impairments, including impairments that, in isolation, are not severe.") (citing 20 C.F.R. § 404.1523; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)).

The ALJ in this case conducted an extensive review of the medical record in this case. She thoroughly discussed each of Plaintiff's impairments, providing detailed references to medical expert opinions and record evidence. However, the ALJ did not conduct the required analysis of Plaintiff's impairments in the aggregate. *See Terry*, 580 F.3d at 477.

While the Commissioner argues that the ALJ "indirectly considered Plaintiff's symptoms by considering the opinions of physicians" aware of Plaintiff's other symptoms, this is simply not enough. To be sure, the Seventh Circuit has acknowledged that an ALJ adequately incorporates a single impairment into her RFC finding where she relies on a medical opinion that incorporates the impairment. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) ("Thus, although the ALJ did not explicitly consider Skarbek's obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions."). However, this precedent does not support the Commissioner's arguments. The Commissioner does not argue, and the record does not suggest, that the medical opinions upon which the ALJ relied in her RFC analysis addressed the combined effects of the full sum of Plaintiff's impairments. The ALJ did not conduct this analysis herself, instead opting to consider each impairment in isolation. This defect, too, warrants remand. *Getch*, 539 F.3d at 483.

10

Accordingly, the Court is remanding for additional proceedings consistent with this Opinion. The ALJ is instructed to assess how each of Plaintiff's severe impairments, alone and in combination, affects her RFC.

B.  Plaintiff's Testimony

Plaintiff also argues that the ALJ did not adequately assess her subjective statements concerning her symptoms. Plaintiff specifically argues that the ALJ impermissibly relied on evidence that Plaintiff did not comply with certain prescribed treatments. The Commissioner contends that the ALJ's analysis was proper.

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication . . . ;
> (v) Treatment . . . for relief of [] pain or other symptoms;
> (vi) Any measures . . . used to relieve your pain or other symptoms . . . ; and
> (vii) Other factors concerning [] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he or she is unable to work, but "must 'consider the entire case record and give specific reasons for the weight given to the individual's statements.'" *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012) (quoting *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009)).

Here, the ALJ relied on Plaintiff's failure to comply with various treatments as grounds to

11

discredit Plaintiff's testimony. AR 25. When considering non-compliance with treatment as a factor in determining whether a claimant is impaired, an ALJ is required to make a determination about whether non-compliance with treatment is justified and develop the record accordingly. *See Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016) ("[T]he ALJ concluded from [the plaintiff]'s gap in treatment . . . that her symptoms were not as severe as she alleged, but, as noted, he did not explore her reasons for not seeking treatment, another error."); *Craft*, 539 F.3d at 679 ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quotation omitted).

An ALJ "will not find an individual's symptoms inconsistent with the evidence in the record . . . without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints," and the ALJ must "explain how [she] considered the individual's reasons in [her] evaluation of the individual's symptoms." SSR 16-3p, 2016 WL 119029, at *8 (Mar. 16, 2016).[1] In considering a claimant's treatment history, the ALJ "may need to contact [the claimant] regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints." *Id.*

The ALJ found that Plaintiff's non-compliance with her CPAP treatment discounted her

---

[1] SR 16-3p, which superseded SSR 96-7p, became effective on March 28, 2016, well after the ALJ issued her opinion. However, SSR 16-3p, by its own terms, was a clarification of existing law rather than a substantive change. *See* SSR 16-3p, 2016 WL 1237954, at *1 (Mar. 24, 2016) (setting SSR 16-3p's effective date); SSR 16-3p, 2016 WL 119029, at *1 (Mar. 16, 2016) (noting that the purpose of 16-3p was to "clarify that subjective symptom evaluation is not an examination of an individual's character" by "eliminating the use of the term 'credibility' from [the SSA's] sub-regulatory policy"); *see also Qualls v. Colvin*, 14-CV-2526, 2016 WL 1392320, at *6 (Apr. 8, 2016). A court reviewing an ALJ's decision may apply a new SSR where the new regulation is a clarification of rather than a substantive change to existing law. *Pope v. Shalala*, 998 F.2d 473, 482-483 (7th Cir. 1993), *overruled on other grounds by Johns v. Apfel*, 189 F.3d 561 (7th Cir. 1999). Therefore, the Court has applied SSR 16-3p and concludes that the ALJ's assessment of Plaintiff's non-compliance with her treatment was deficient under both SSR 16-3p and SSR 96-7p.

12

testimony. AR 25. However, the ALJ did not conduct an analysis of Plaintiff's reasons for non-compliance. The ALJ elicited testimony from Plaintiff that revealed Plaintiff's non-compliance might have been related to one of her severe impairments, her sarcoidosis. AR 75-76. While the ALJ referenced Plaintiff's sarcoidosis at multiple points in her opinion, she did not provide any discussion of why Plaintiff's reasons for failing to comply with her treatment were unconvincing or were not supported by objective evidence. Without this analysis, the Court is unable to inspect the ALJ's reasoning, and remand is appropriate. *See O'Connor-Spinner*, 627 F.3d at 618.

Although the ALJ pointed to other factors in discounting Plaintiff's testimony, the above mentioned errors are not harmless. On remand, the ALJ might still discount some of Plaintiff's statements, but might afford others greater weight than in the first instance due to the change in analysis consistent with this Opinion. Accordingly, the Court is remanding for the ALJ to properly assess Plaintiff's testimony concerning her symptoms and limitations.

D.     Remedy

Plaintiff requests that the Court reverse the Commissioner's decision and remand for an award of benefits. An award of benefits is appropriate "only if all factual issues have been resolved and the record supports a finding of disability." *Briscoe*, 425 F.3d at 356. Here, all factual issues have not been resolved and, as a result, remand is the appropriate remedy. Depending on the outcome of the ALJ's analysis on remand, she might need to elicit additional testimony to determine whether Plaintiff is disabled. Furthermore, Plaintiff did not provide any argument on why an instant award of benefits would be appropriate. Accordingly, the Court is remanding this matter for further proceedings consistent with this Opinion.

V.     **Conclusion**

For the foregoing reasons, the Court hereby **GRANTS** the request contained in Plaintiff's Plaintiff's Brief in Support of Her Motion to Reverse the Decision of the Commissioner of Social Security [DE 17], **REVERSES** the Administrative Law Judge's decision, and **REMANDS** this matter to the Commissioner for further proceedings consistent with this Opinion.

So ORDERED this 29th day of September, 2016.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record